May it please the Court, James Fife of Federal Defenders, on behalf of the appellant, Ms. Fitzgerald. I'll try to reserve one minute for rebuttal. Certainly. The District Court's failure to resolve a material factual dispute regarding the purpose of prior border crossings violated the mandate of Rule 32, precisely as in United States v. Houston, and equally requires a remand. Because the crossings constituted the only basis for denying minor role articulated by the District Court. And the Court completely ignored other required considerations for gauging minor role. It legally erred, and the case should be remanded. There was a very clear instance of controverted matter in this case, which was, what was the purpose of the computerized record showing multiple crossings over several months between January and April in this case? Now, the PSR reported this, that there were these multiple crossings, and it reported Ms. Fitzgerald's post-arrest statement that she did not conduct any prior runs, and she did not, was not even burning the plates, conducting dry runs just to burn the plates. She did not conduct more than one smuggling incident, which was the one she was arrested for. Did she affirmatively proffer during that statement or subsequently to the District Court innocent reasons for her multiple crossings? No, I don't believe so, Your Honor. We only have a record based on the discovery and the police reports in the PSR. There was no explanation. In fact, the probation officer didn't draw any conclusion of it. The probation officer just reported this fact, the fact of the crossings and the fact of Ms. Fitzgerald's denial. Where this becomes controverted issue, I will say that in the sentencing memo, this was reiterated by the defense, saying that she had only done one crossing and that she did not make multiple crossings on behalf of the cartel to burn the plates. But at sentencing, the prosecution raised the dispute about what was the meaning of these crossings and saying that it found it could not think of more than only one possible logical reason for someone from Drakersfield making this many crossings in this amount of time was to smuggle drugs, but then immediately going on saying, well, the other logical possibility is burning the plates, both of which Ms. Fitzgerald denied. And then defense counsel did explain what was the purpose of these crossings. This was a time, as was well documented in the sentencing memo, a time of great life stress that caused Ms. Fitzgerald to relapse in her substance abuse. And ironically, as pointed out in the sentencing memo, the reason she engaged in this smuggling activity was to earn the money so that she could get back into the rehabilitation program because she was so desirous of maintaining that. And that's really clear from the record that that was her motivation, and the district court seemed to accept that, that she really wanted to stay in this. But during this period of life stress, she relapsed, had to get this in order to get money to get back in the rehab program. But during this time, the crossings from Bakersfield to Rosarito were in order to see her program sponsor, something that was critical for helping her try to stay on the right track. And she explained that that's why she was crossing so many times, 26 times over the course of three months. What is wrong with the district court saying that the government has proffered this explanation, she's got this other explanation. I don't have enough information to reconcile the two versions, and so therefore, the defense hasn't sustained its burden of proof, because as the minor role, the burden of proof is with the defense. Perhaps that wouldn't be such a problem, except the fact that the district court, the last thing the district court said here, and the district court said very little about the role analysis here, the last thing she said was, I think you probably shouldn't be crossing back and forth that much, or at all, but that's why you're not getting role, ma'am. This was the reason, the only articulated reason why you're denying role. Well, I'm looking at the court's explanation. Neither side has persuaded me. I don't feel I have enough to make a decision. I'm not going to give role. So when the evidence is in, I propose the court said, hey, it's your burden. You didn't give me anything to essentially corroborate the proffered innocent explanation for the multiple crossings. Is it not appropriate to place that burden on the defense? I don't think so in this case, Your Honor. And I don't, I think the problem is that that wasn't a resolution of this. I mean, when she's saying, when she's saying I don't think I've been persuaded either side, this was coming right after the discussion of the purpose of the crossing. So I think what she was referring to is not role in general, but you haven't persuaded me. It's the burden. She was talking about the burden. She's saying that, well, I think that in the context of this is that they were just talking about the reasons for the crossing, and there were two opposing explanations for why there were so many crossings. And she says, I don't think either side has persuaded me on that. I mean, why would she say either side when, of course, the government has no burden to persuade her about role? I mean, it's, if she was talking about burden, she wouldn't talk about either side. She would say, I don't believe you persuaded me that you were entitled to minor role. I think in the context, well, let's just say that in the six, literally six sentences that the district court said on minor role, I, to this day, can't figure out what is she actually deciding and ruling on because on the one hand, the government says, well, she clearly resolved this matter because she denied role. Well, that's an argument that was rejected at Houston. The fact that you make a ruling doesn't mean you've resolved the factual dispute. And the reason I say I don't think she resolved the factual dispute is because if she accepted the government's view that she was doing some nefarious thing, burning plates or moving drugs, the way she went on and worded it in other parts of that same ruling just don't make any sense. As I pointed out in the reply, for instance, she said, you shouldn't be crossing in and out of Mexico, not you shouldn't be smuggling drugs. You need to be careful, not you need to obey the law. Not you're playing with fire when you do that. Not you're committing a new felony. You've taken a detour. You've had a stumble. Not you've committed numerous new importation offenses. The way she describes this isn't that, doesn't sound at all like an express, an explicit finding that these were nefarious purposes. She didn't make that. I mean, the things that she said said, well, she said, well, maybe you shouldn't be crossing so much. That's a kind of a dodgy thing to do. Not that you are committing an offense. You are importing crimes. So I think this is just like Houston, because I'll have to say, like, the court found in Houston that the district court's remarks were ambiguous. But at the same time, the district court there said in Houston, I heard the comments of counsel and those of Mr. Houston, and that it agreed with the prosecutor's analysis concerning the threats, and said, I don't know how much clearer it could be. So that sounds very definite, but still the court, this court in Houston, said, well, the court didn't really resolve this. So that even when the judge said, I don't know how much clearer this could be, that seems much more definite from the closest thing the government was able to point to here, which was it's hard to imagine that this is just the first time with that number of crossings. Okay. Do you want to touch on any of your other points? I don't know if the Court has a question about that. Let me ask. I think this infected, very much infected, the role determination, besides the fact that the judge did not refer to any of the other required factors, such as a comparison, limited knowledge, or anything else that's recognized as required for an adequate role analysis. It was just this one point. Let me ask you this one question. Sure. It seems odd that someone living in Bakersfield would drive all the way to the border into Mexico. That's a round trip, what, about 450 miles? I think a couple of miles, a couple hundred miles, Your Honor, but I think. I mean, round trip. Yes. Round trip. Yes. Yes. I think that's quite a long trip. But I think the point. How much time did she spend with this counselor? Yeah. Yeah. I don't know that that's not in the record, Your Honor. What we do know is that the distribution of the. When she was having her treatments there, how long did they take? I don't think they were actual treatments, Your Honor. I think it was sort of like Narcotics Anonymous and Alcoholics Anonymous. You have a sponsor, someone who's a resource person you can turn to. I know all about that. So I think that's what it was. It wasn't like formal treatment that's going on. I think she was spending time with her sponsor to try to build her spirits. How much time did she spend? Well, I don't think that's in the record, Your Honor. I don't know. But as I was saying, the distribution of the record of the number of crossings seems to show that it's like on a weekly or biweekly basis over the course of three months. And so this is consistent, as counsel argued at sentencing, this is consistent with her crossing on weekends during the time when she could spend with her sponsor, spend the weekends with her sponsor in order to help her through this crisis. All right. We've taken you over your time. Thank you. Okay. Thank you. Good morning. It pleases the Court. I'm Randy K. Jones on behalf of the United States appellee. With respect to this case, it's interesting that the facts show that the defense or that the appellant came up with this story about the sponsor in a late filing to the court. When she had an opportunity to talk about what had happened to the probation officer, she noted that she was not responsible for burning the plate but mentioned nothing about the reason for her going down to Mexico was to visit her sponsor. And as my opponent has just indicated, there were no other details about this story other than I'm just going down to visit my sponsor. And the dates that she was going down were not on the weekend. She was going down on Mondays during the week to go down to Mexico. And these crossings would indicate that. So when the court asked me to expound on the text crossing and what we felt that that meant with respect to the minor role reduction, it was the United States' belief that the reason for her going down to Mexico was to be actually involved in drug trafficking. She was a registered owner of this vehicle. She registered this car and got the insurance in December. The crossings began from January and went through April, as counsel has indicated, some 26 crossings, for her traveling from Bakersfield down to Tijuana during this time. She was a registered owner. She was the sole occupant of the vehicle. There was a large quantity of marijuana in the car. The marijuana was concealed within the tires of the car. And so when the district court began the sentencing hearing, the district court indicated that it had reviewed the pre-sentence report, that it had reviewed the information provided by the defense in their sentencing memorandum, and it also reviewed the sentencing summary charts and had enough information for the court to make a decision regarding not only the minor role but the sentence that would be proper in this case. And we believe that the court did, in fact, resolve this issue with respect to the crossings by finding it against the appellant in this case. The mere fact that the court said that neither side has persuaded me on this issue means that the appellant has lost that issue because this court has already, in its question, is the appellant's burden of proof by preponderance of the evidence to convince the court. Let me ask you this question. When a person crosses the border or comes to this particular checkpoint, do they take a picture of the automobile? Does the government take a picture? Normally, there's a camera that will record the crossings. It will show the vehicle and the person crossing into the United States. All right. So does anyone check that camera? No. Since this case resulted in a plea agreement, we did not request or review the cameras of the crossing, I mean the photographs of the crossings. And typically, Your Honor, they only keep those photographs for a certain amount of time. You know, that could have been exculpatory evidence. Well, there was no, it was uncontroverted that she crossed these number of times. The only thing that was different is that at the sentencing hearing, and this is the first time we heard this, at the sentencing hearing, she gave a recognition. Let me tell you something. The first time I ever heard the expression burning the plates is in this case. Well, it's a typical. And I'm not quite burning the plates. Is that in the dictionary? No, I don't believe it's in the dictionary. But it is in our. What's it supposed to mean? Well, basically, my understanding is that the traffickers will get a car that's registered, have it come through the port of entry a number of times before it's loaded so that it will cause less suspicion because it's not the first time that the vehicle crossed into the United States. It shows a history of the car crossing into the United States. And the plates were the photograph taken? Yes, the way it reads, and this is not in record, but the way it reads is that there's a camera, and when the car comes into the United States, it will take a photograph of the license plate, and then that information is put into the computer and goes on from there. So that would be very easy to get a readout of that computer. Yes, and that's why we have the crossing history. The crossing history that we're referring to is a computerized record of those crossings into the United States. I see. Yes. So you've got that. Does it show the driver? Yeah, it will show the driver, and oftentimes, if there are any other occupants in the vehicle, it will show the occupants, but it definitely shows the driver because the driver has to present identification coming into the United States. So they take that picture, too? Yes, there's a camera there at the primary booth that would take the picture of the driver and the vehicle coming into the United States. And there was no question that she drove this vehicle into the United States multiple times between January 2013 and April 2013, and she was arrested on April 28, 2013. The border crossing document shows the driver's identity, too, or just the camera? Or are you saying both? The crossing history will show the driver and would also show, if there are photographs, the photographs will also show the driver. So that information, so the government knew that there were multiple crossings of this vehicle. Correct. Because that's burning the plates and all that. That's easy to get. And pictures of the driver, are they easy to get? Oftentimes, they are. Usually, the defense will request that we preserve any video evidence at the border, and we will then, if it's in, I think, a 60-day period, they will hold those videos and photographs. But in this particular case, because this case ended in a plea agreement and it wasn't set for trial, we didn't request any video or photographs of the crossings. But we had the computerized records. They're called the Treasure Enforcement Computerized System records or text records. Yeah, yeah. Yeah. We did have that, and there was no question that she was the person who drove into the United States on these occasions in that vehicle. Well, how can you say there's no question about that? Because the way the system works is that when you come into the United States, you present your identification, and that's recorded in the computer system. So you have the name of the driver, the license plate, the port of entry that the vehicle comes in, the time that it came in, and some other information. Okay. So you're saying they get the name off the photograph of the driver's license. Or whatever identification is presented, yes. Or whatever identification. And then there's also a camera that will record the entrance of the driver and the vehicle into the United States. And so the only dispute at sentencing was the reason for all those crossings. Correct. Exactly. And as I stated, the appellant only came up with the story about the sponsor on the flight, if I can use that term, there during the sentencing hearing. She had an opportunity to explain herself during the pre-sentence report, and she didn't. And we believe that the court was justified and did not err by rejecting her reason for going down to Mexico. And the difference in sentencing was about six months. That's correct. All right. Thank you. Thank you very much. All right. Let's put a minute on the clock. I just have one additional point to make. As Judge Schroeder pointed out, the issue here was the purpose. Was it nefarious or benign? That was the only dispute. And I would point out that the court here had no problem whatsoever granting that three-level acceptance of responsibility. And in order to do that, and for the government to recommend it, and for the court to grant it, it has to find that the defendant did not even frivolously contest any relevant conduct. So here, certainly, smuggling additional drugs or burning the plates in order to facilitate the crossing would be relevant conduct. If Ms. Fitzgerald had even frivolously contested that, the court couldn't have granted the three-level reduction that it did. The government's, on the government's side, it's pure speculation. We have these crossings. The government just says, we think it's drugs. They have nothing to back that up. But here we have a statement by Ms. Fitzgerald that she did not do any of that activity, and a specific explanation was given by the defense at sentencing. This case is very much like Medina-Castro, a case which Judge Pragerson and Judge Wynn were on earlier this year, where the court found, again, there was no evidence for the basis of the court's decision that the defendant knew there were drugs hidden in the car. That was a bulk cash smuggling case, but there were also drugs in the car. And the district judge said, well, I believe he knew there were drugs in the car. But the judge had absolutely no basis to do that. It was just speculation. It just wasn't there. Kagan. Thank you very much. I appreciate both sides for coming in. Thank you very much. The matter is submitted, and just so the record is clear, U.S. v. Menchaca-Hernandez. The next case has been submitted on the briefs. The next two cases, Alfaro-Sotelo v. Holder and Ramos-Castaneda v. Holder, submissions been deferred, and those matters were referred to mediation. Rochin v. Holder has been dismissed. And the next the last matter, Plattus-Hernandez v. Holder, has been submitted on the briefs. So the Court is adjourned for the day. Thank you very much.
judges: Schroeder, Pregerson, Nguyen